IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHARLES H. JUERGENSMEYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06-3088 |
| | ) | |
| SHARON BEHME, LUKE BEHME, | ) | |
| CARL BEHME, JEFF BEHME, and | ) | |
| CHRIS BEHME, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Refusing to dismiss Juergensmeyer's initial Complaint, this Court granted him leave to amend with the admonishment that a variety of issues required further elucidation.  Although Juergensmeyer timely filed an Amended Complaint, he has failed to sufficiently rectify some of the omissions noted in this Court's first opinion.  Therefore, the Behmes' motion to dismiss Juergensmeyer's Amended Complaint is granted.

## FACTUAL AND PROCEDURAL HISTORY

On April 18, 2001, Plaintiff Charles H. Juergensmeyer ("Juergensmeyer"), an elderly man suffering from age-related difficulties, granted Defendant Sharon Behme ("Sharon"), a certified public accountant, a power of attorney to act on his behalf. Juergensmeyer alleges that Sharon, beginning in 2001 and continuing through June 30, 2002, wrote herself checks totaling over $100,000 without providing commensurate services. The Amended Complaint also claims that Sharon misused Juergensmeyer's money by giving some to her son Luke Behme, purchasing a truck for her father Carl Behme, paying her brother Chris Behme to rehabilitate real estate, and inducing Juergensmeyer to purchase a high performance engine for her brother Jeff Behme (collectively "the Behmes").

On May 9, 2006, Juergensmeyer filed a one-count Complaint against the Behmes alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (hereinafter "RICO"). The Behmes moved to dismiss. Although the motion was ultimately denied in

2

favor of granting leave to amend the Complaint, this Court instructed Juergensmeyer to address the issues raised in the Motion to Dismiss and warned that no additional amendments would be allowed. On August 30, 2006, Juergensmeyer filed his Amended Complaint and Defendants responded with a second Motion to Dismiss that renewed many of the arguments from their original motion.

## APPLICABLE STANDARDS

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, a district court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. *Moranski v. Gen. Motors Co.*, 433 F.3d 537, 539 (7th Cir. 2005) (citation omitted). "'While a complaint . . . does not need detailed factual allegations, [the] allegations must be enough to raise a right to relief above the speculative level. . . .'" *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)).

3

## ANALYSIS

Juergensmeyer alleges violations of RICO under 18 U.S.C. § 1962(b), (c), and (d). The Behmes argue that the RICO claim is untimely and, even if it were not, it fails to adequately allege a pattern of racketeering activity.[1]

### A.  Statute of Limitations

The Behmes first assert that Juergensmeyer's RICO action is partially or entirely barred by the statute of limitations, since two of the three predicate acts occurred more than four years after the complaint was filed.

For RICO violations, the limitations period is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987). The four year period, however, does not begin to run until a plaintiff knows or should have known that he was injured. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004); *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1464-66 (7th Cir. 1992); *see also Rotella v. Wood*, 528 U.S. 549, 554 n.2, 555, 120

---

[1] Because this Court concludes that Juergensmeyer has failed to allege a pattern, it does not address the other potential grounds for dismissal raised in the Behme's Motion to Dismiss.

S. Ct. 1075, 145 L. Ed. 2d 1047 (2000) (rejecting an "injury and pattern discovery" rule for accrual but refusing to expressly require an "injury discovery" rule because of the possibility that an "injury occurrence" rule could be adopted); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 186-87, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997) (rejecting "last predicate act" rule for determining accrual). Juergensmeyer has alleged that Sharon Behme took specific steps to prevent him from discovering any wrongdoing and, as a result, he did not and could not have discovered the injury to his property until August 2002. Assuming these facts to be true, the limitations period would then run from August 2002 until August 2006. Since the original complaint was filed on May 9, 2006, it falls within the four-year limitations period.

B.   **Pattern of Racketeering Activity**

In order to allege a RICO violation under any of the provisions of § 1962, a plaintiff must allege a pattern of racketeering activity. *See* 18 U.S.C. § 1962(b)-(d). Juergensmeyer alleges three instances of mail and wire fraud occurring between November 30, 2001, and May 13, 2002, all

of which relate to Sharon Behme using her power-of-attorney to take money and property from Juergensmeyer. The Behmes argue such allegations are insufficient to establish a pattern of racketeering activity.

The RICO statute describes a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). This provision, however, merely "places an outer limit on the concept of a pattern of racketeering activity. . . ." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). To prevent "turn[ing] routine commercial disputes into civil RICO actions," the Supreme Court has imposed an additional restraint, the "continuity plus relationship" test, which requires that the predicate acts be related to one another (relationship) and that those acts pose a threat of continued criminal activity (continuity). *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992) (citing *H.J., Inc.*, 492 U.S. at 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195; *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14, 105 S. Ct. 3275, 87 L. Ed. 2d 346

(1985)). The parties dispute only the continuity prong.

"[T]he continuity requirement exists to give effect to Congress's clear intention that RICO target long-term criminal behavior, as opposed to more discrete acts of fraud." *Jennings*, 495 F.3d at 473 (citation omitted). "'Continuity' is both a closed- and open-ended concept," *H.J., Inc.*, 492 U.S. at 241, 109 S. Ct. 2893, 106 L. Ed. 2d 195, meaning that RICO plaintiffs can show continuity by "(1) demonstrating a close-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future," *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 673 (7th Cir. 2005) (citing *Midwest Grinding*, 976 F.2d at 1023).

Juergensmeyer fails to show either close- or open-ended continuity. First, the Amended Complaint fails to adequately allege open-ended continuity. "An open-ended period of racketeering . . . is a course of criminal activity which lacks the duration and repetition to establish continuity" but which, "'by its nature projects into the future with a threat

7

of repetition.'" *Midwest Grinding*, 976 F.2d at 1023 (quoting *H.J., Inc.*, 492 U.S. at 241, 109 S. Ct. 2893, 106 L. Ed. 2d 195). "Such a threat of continuity exists when the plaintiff can show (1) a 'specific threat of repetition,' (2) that the 'predicate acts or offenses are part of an ongoing entity's regular way of doing business,' or (3) that the defendant operates a 'long-term association that exists for criminal purposes.'" *Id.* (citing *H.J., Inc.*, 492 U.S. at 242-43, 109 S. Ct. 2893, 106 L. Ed. 2d 195). In his Amended Complaint, Juergensmeyer does not allege that this is a long-term criminal association or that the behavior alleged constitutes an ongoing part of the Behmes' regular way of doing business. Nor does the Amended Complaint suggest a specific threat of repetition. Indeed, since Sharon no longer possesses a power-of-attorney for Juergensmeyer, repetition seems impossible. Therefore, this is not a case of open-ended continuity.

"Close-ended continuity . . . refers to criminal behavior that has come to a close but endured for such a substantial period of time 'that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future.'" *Jennings*, 495 F.3d at

473 (quoting *Midwest Grinding*, 976 F.2d at 1022-23). Since the criminal behavior alleged here ended with the termination of the power-of-attorney, this case is properly analyzed as involving close-ended continuity. In determining whether sufficient continuity exists, a multifactor test is employed, taking into consideration "(1) the number and variety of predicate acts and the length of time over which they were committed, (2) the number of victims, (3) the presence of separate schemes, and (4) the occurrence of distinct injuries." *Roger Whitmore's*, 424 F.3d at 673 (citing *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)); *see also Midwest Grinding*, 976 F.2d at 1023 ("In making that determination [of whether close-ended continuity exists], we are aided by the multifactor continuity test outlined in *Morgan* . . ., which survives *H.J., Inc.*").

Although no single factor is necessarily determinative, *Morgan*, 804 F.2d at 976, the duration factor is "the closest thing we have to a bright-line continuity test," *Midwest Grinding*, 976 F.2d at 1024, and, as such, is "[p]erhaps the most important element of RICO continuity," *Roger Whitmore's*, 424 F.3d at 673. "The cases in our circuit . . . demonstrate that

9

a time frame of less than nine months likely does not satisfy the duration requirement." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 780 (7th Cir. 1994). In this case, Juergensmeyer alleges three instances of mail and wire fraud spanning a period of less than 6 months. Such a short time period militates heavily against finding continuity.

The other factors, though less weighty than duration, also suggest a lack of continuity. First, the "number and variety of predicate acts" fails to support Juergenmeyer's position because only three predicate acts occurred and all of those related to mail and wire fraud. *See Jennings*, 495 F.3d at 475 ("We have repeatedly rejected RICO claims that rely . . . heavily on mail and wire fraud allegations to establish a pattern."); *Vicom*, 20 F.3d at 781 ("Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts . . . may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate directly into a 'pattern' of racketeering activity." (citations and internal quotations omitted)). The

10

second factor, the number of victims, also favors a finding of no continuity since only Juergensmeyer was harmed. Juergensmeyer claims that the third factor, the number of schemes, supports his claim because the Behmes engaged in multiple transactions to defraud him. Nevertheless, as he readily admits, all of these transactions were "part of a single grand scheme to defraud the Plaintiff." (Pl.'s Resp. to Def.'s Mot. to Dismiss at 9). Indeed, the one overarching scheme appears to be Sharon's use of her power-of-attorney to obtain Juergensmeyer's money. Thus, this factor does little to aid Juergensmeyer. *See Vicom*, 20 F.3d at 781-82 (rejecting attempt to plead five separate acts as distinct schemes where all were related to a single overarching scheme). Even to the extent that any disparate schemes were involved, none of them resulted in distinct injuries as required under the fourth factor. To the contrary, every transaction caused the same injury: Juergensmeyer's loss of money and property.

Since the *Morgan* factors strongly suggest a lack of continuity, this Court finds that Juergensmeyer's Amended Complaint fails to adequately allege a pattern of racketeering activity. *See, e.g., Jennings*, 495 F.3d at 474-

76 (no pattern where most predicate acts related to mail and wire fraud directed at one victim in a single general scheme lasting, at most, ten months); *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992) (no pattern where the only predicate acts were mail and wire fraud directed at a single victim in a single scheme lasting seven to eight months). As the Seventh Circuit has recently reiterated, "RICO . . . was never intended to apply to . . . brief, close-ended, instances of fraud, where there is only one identifiable victim, and that victim suffered one articulable injury." *Jennings*, 495 F.3d at 476. This case is no exception.

## CONCLUSION

Since Juergensmeyer's Amended Complaint (d/e 11) fails to sufficiently establish the existence of a pattern of racketeering activity, this Court grants the Behmes' Motion to Dismiss (d/e 13).

IT IS SO ORDERED

ENTER:   November 28, 2007

FOR THE COURT:               /s Richard Mills
                             United States District Judge